UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:24-cr-00010-GFVT-MAS |
| | ) | |
| v. | ) | |
| | ) | |
| APRIL R. ROBERTSON & JASON C. OCEAN, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on Defendant Jason Ocean's Motion to Change Venue. [R. 40.] Ocean argues that this case has been brought in the wrong district under Federal Rule of Criminal Procedure 18 and that transfer to the Western District of Kentucky is the appropriate remedy. Alternatively, he argues that transfer is appropriate under Federal Rule of Criminal Procedure 21 because he would be prejudiced by trial here in the Eastern District and because the convenience of the parties and the interests of justice further counsel transfer. For the reasons laid out below, Ocean's Motion to Change Venue **[R. 40]** will be **DENIED**.

## I

Jason Ocean and April Robertson are charged with conspiring to commit healthcare fraud, multiple individual counts of healthcare fraud, and money laundering offenses. [R. 1.] Ocean is a Licensed Clinical Social Worker who lives and works part-time in Louisville, Kentucky and Durham, North Carolina. [R. 40-1 at 1.] Ocean owned and operated Ocean Behavioral Healthcare, LLC. [R. 1 at 7.] Robertson separately owned and operated Grace N Mercy Support Services, LLC, and Grace N Mercy Residence, Inc., where Ocean authorized

services as a licensed clinical social worker.  *Id*. at 6-7.  The government alleges that over a multi-year period Ocean and Robertson "caused these entities to submit hundreds of fraudulent claims to Kentucky's Department for Medicaid Services (DMS) through contracted Managed Care Organizations (MCOs)."  [R. 41 at 2.]

The government alleges that the Defendants' scheme involved a combination of providing some behavioral health services to Medicaid members for a minimal period before fraudulently continuing to bill after services had stopped, fraudulently billing for services when none had been provided at all, and other mechanisms for extracting payments to which they were not entitled.  [R. 1 at 8-9.]  Much of the Defendants' business was conducted in Louisville, in the Western District of Kentucky.  [R. 40-1 at 2-3.]  However, the government does identify several ties to the Eastern District.  Kentucky's DMS is a subsidiary of Kentucky's Cabinet for Health and Family Services and both agencies are located in Franklin County, in the Eastern District of Kentucky.  [R. 1 at 1.]  As part of the alleged scheme, the Defendants "initially enrolled their entities with DMS using MAP-811 forms transmitted to the agency and processed in the Eastern District of Kentucky."  [R. 41 at 2.]  Furthermore, the government notes that "on a nearly daily basis, for almost three years, Ocean and Robertson were reimbursed from a location in the Eastern District of Kentucky, by DMS, through its fiscal intermediaries."  *Id*.  Finally, while many of the Defendants' Medicaid clients lived in the Western District of Kentucky, at least 16 were located within the Eastern District.  *Id*.

Defendant Ocean now moves to transfer this case to the Western District of Kentucky. [R. 40.]  He presents three arguments in support of his motion.  First, he suggests that bringing charges in the Eastern District runs afoul of Federal Rule of Criminal Procedure 18 and the Sixth Amendment because the alleged criminal acts occurred in the Western District.  [R. 40-1 at 5-6.]

2

Next, he suggests that transfer is also warranted under Federal Rule of Criminal Procedure 21(a) in order to prevent prejudice. *Id*. at 6-7. In Ocean's view, jurors in the Western District, including Louisville, are better equipped to understand the context of his work. *Id*. He points to the racial makeup of Louisville and recent issues surrounding a dearth of mental health services in Louisville to support this contention. *Id*. Finally, Ocean suggests that transfer is appropriate under Federal Rule of Criminal Procedure 21(b) for the convenience of the parties and the interests of justice. *Id*. at 7-14. The government and his co-defendant oppose his motion. [R. 41; R. 42.]

## II

## A

As the first grounds for his motion, Ocean contends that prosecution in this district violates Federal Rule of Criminal Procedure 18 and his Constitutional rights. [R. 40-1 at 5-6.] Federal Rule of Criminal Procedure 18 and the Sixth Amendment provide that a criminal prosecution must occur in the district where the crime was committed. U.S. Const. amend. VI; Fed. R. Crim. P. 18; *see also United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998). While some crimes are cut-and-dry committed in only one location, "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done*." United States v. Lombardo*, 241 U.S. 73, 77 (1916); *see also United States v. Myers*, 854 F.3d 341, 351 (6th Cir. 2017) ("The Supreme Court has therefore repeatedly approved as constitutionally permissible the prosecution of a crime in a district in which the crime was committed only in part.") (collecting cases). Venue for continuous crimes is therefore proper in "any district where the "offense was begun, continued, or completed." *United States v. Castaneda*, 315 F. App'x. 564, 569 (6th Cir. 2009) (quoting 18 U.S.C. § 3237(a)).

3

The government contends that, while Ocean's (and Robertson's) alleged criminal violations may have begun or occurred in part in the Western District of Kentucky, they continued into and were completed within the Eastern District of Kentucky when the defendants caused Medicaid claims to be submitted to – and paid by – DMS in Frankfort, Kentucky.  [R. 41 at 4-5.]  Addressing similar charges of health care fraud brought, like this case, in the Eastern District of Kentucky, the court in *United States v. Portis* 2020 WL 3566846 (E.D. Ky. July 1, 2020), applied the "substantial contacts" test to determine if venue was proper.  *Id*. at *1-2.  The substantial contacts test is used to determine when venue is constitutionally adequate and "instruct courts to look to 'the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding.'" *Castaneda*, 315 F. App'x at 569 (quoting *United States v. Williams*, 788 F.2d 1213, 1215).  As the *Portis* court noted, "[t]he substantial contacts test does not require transfer to the venue with the *most* substantial contacts; nor does it rewrite the language of § 3237(a), which clearly contemplates prosecutions with more than one acceptable venue without ordering a forced ranking of those venues." *Portis*, 2020 WL 3566846 at *1.

A conviction for healthcare fraud requires proof that a defendant "knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services" and "executed or attempted to execute this scheme or artifice to defraud."  *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (citation and internal quotation marks omitted).  The indictment in this case makes clear that, like the defendant in *Portis*, Ocean caused claims to be submitted to, and disbursed from, the Eastern District.  That more activity was conducted by the Defendants in the Western District than the Eastern District does not mean the Eastern District is an improper venue.  *United States v.*

4

*Taylor*, 2006 WL 4643321, at *3 (S.D. Ohio July 31, 2006) (noting that venue is proper for a continuing criminal enterprise in any district in which an act in furtherance of that enterprise occurred) (citing *United States v. Kramer,* 955 F.2d 479, 48 (7th Cir. 1992)); *United States v. Ebersole*, 411 F.3d 517, 531 (4th Cir. 2005) (venue proper in district where false claims were submitted to an intermediary *and* in district where intermediary presented claims to the government); *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973) (venue proper in the Southern District of New York even when it was a third-party, and not the defendants, that forwarded documents to the Southern District).  Venue is a factual issue that the government must prove by a preponderance at trial.  *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984).  At this point the government has sufficiently established venue.[1]

**B**

**1**

Ocean next suggests that transfer is warranted under Federal Rule of Criminal Procedure 21(a) because having trial occur in the Eastern District would prejudice his defense.  [R. 40-1 at 6-7.]  In Ocean's view he is unknown to the jurors of the Eastern District, with their only image of him informed by the fact that he is on trial for healthcare fraud.  *Id*. at 6.  By contrast, he is "known in the Louisville community where he practices and volunteers his time with non-profits and other charitable organizations."  *Id*.  Ocean expands this argument to emphasize differences in the racial makeup of the Eastern and Western District, which he argues is relevant to the fact

---

[1] For offenses under 18 U.S.C. § 1957, including the money laundering charges brought in this case, venue is proper in "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted*." United States v. Gowder*, 841 F. App'x 770, 779 (6th Cir. 2020) (citing 18 U.S.C. § 1956(i)(1)).  Here the underlying unlawful activity identified in the indictment is the health care fraud conspiracy and related charges discussed above.  [R. 1.]

that he is an African American man. *Id*. at 6-7. Along similar lines, he draws attention to the challenges Louisville has faced in recent years regarding mental health, particularly for minorities and the impoverished. [R. 40-1 at 6, 12-14; R. 43 at 2-5.] In support of his arguments, Ocean appears to rely primarily on *United States v. Flaxman*, 304 F. Supp. 1301 (S.D.N.Y. 1969), which waxed eloquently about the jury vicinage provisions of the Sixth Amendment and emphasized that a defendant should be tried before "the most informed jury" and "among those who know the local conditions surrounding the criminal acts." *Flaxman*, 304 F. Supp. at 1303.

Federal Rule of Criminal Procedure 21(a) provides that a "court must transfer the proceeding against [a] defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." A change in venue can be warranted by presumptive or actual prejudice. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). A defendant must show presumptive or actual prejudice as a "demonstrable reality" not merely as a "matter of speculation." *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005) (quoting *Kelly v. Withrow*, 25 F.3d 363, 368 (6th Cir. 1994). "Courts rarely find that presumptive prejudice exists." *United States v. Poulsen*, 655 F.3d 492, 507 (6th Cir. 2011) (citing *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) ("The category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow.")).

As the government points out, there are several flaws with Ocean's argument and its overreliance on *Flaxman*. As an initial matter, *Flaxman* is non-binding in this district. Turning to the facts, in *Flaxman* the defendant was essentially charged with making false statements by making false representations to the Veteran's Administration in order to help veterans he was

selling homes to receive a home loan guaranty. *Flaxman*, 304 F. Supp at 1302. The case was brought in the Southern District of New York on the government's theory that the crime was not completed until the forms "had passed into the hands of the VA in Manhattan." *Id*. at 1303. The district court disagreed, noting that Flaxman's active role in the crime was completed in the Eastern District of New York and that the submission of forms to the Southern District was in violation of VA regulations. *Id*. at 1304. Accordingly, the *Flaxman* court determined that indictment should be dismissed pursuant to Federal Rule of Criminal Procedure 18 and the Sixth Amendment's jury vicinage provision. *Id*. at 1305.

Setting aside the fact that the court's analysis in *Flaxman* is clearly at odds with later case law development as described in section II.A, supra, it also appears to have been abrogated by a Second Circuit case following not long after, *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973). In *Candella* the defendants were charged with submitting false bills of lading and affidavits to the City of New York and, by extension, the United States Department of Housing and Urban Development. *Id*. at 1224. As in *Flaxman*, the *Candella* defendants were charged in the Southern District of New York but claimed that the Eastern District was the proper venue because that is where their active role in the crime terminated. *Id*. at 1227-28. The Second Circuit disagreed, reasoning (similarly to many other courts) that the defendants' crime was completed in the Southern District as "venue is properly laid in 'the whole area through which force propelled by an offender operates.'" *Id*. at 1228 (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)). Thus, the ultimate submission of the false documents in Manhattan, even though the City accepted them from the defendants in Brooklyn, was sufficient to establish venue – a decision not easily reconcilable with the lower court's decision in *Flaxman*. *Id*.

Extended explanation aside, Ocean primarily seems to use *Flaxman* for its more general articulation of the principals surrounding the Sixth Amendment and the idea that a defendant should be tried by "the most informed jury." [R. 40-1 at 11-14.] Notably he relies on little other case law. Considering a similar venue challenge based on the racial makeup of the jury pool, the district court in *United States v. Vela-Salinas*, 2014 WL 3555972 (M.D. Tenn. July 18, 2014), noted that "[a] defendant is not entitled to trial in a venue where the racial composition of the jury pool is more favorable to the defendant." *Id*. at * 6 (citing *United States v. Cannon,* 88 F.3d 1495 (8th Cir.1996), *overruled on other grounds, Watson v. United States,* 552 U.S. 74 (2007)). Rather, "[t]he Fourteenth Amendment requires only a racially neutral jury selection process." Id. (citing *Batson v. Kentucky,* 476 U.S. 79, 85 (1986)). The Sixth Circuit has held that a statistical difference in race between two districts' jury pool does not satisfy the burden to justify a transfer. *United States v. Logan,* 542 Fed. Appx. 484, 493 (6th Cir. 2013).

While Ocean appears to concede that his argument "is not that the racial makeup of the two districts alone requires transfer," he continues to suggest "that collectively, the difference in racial composition [between the Eastern and Western Districts] and the realities that arise therefrom…make it clear that Louisville is the venue in which the defendants may 'be tried before the most informed jury.'" [R. 43 at 4-5.] Ocean has not carried his burden to show that these differences will prejudice his defense. Venue is constitutionally proper in the Eastern District and, as the government points out, "[j]urors in both the Eastern and Western Districts of Kentucky have knowledge about the Kentucky Medicaid program and local conditions surrounding its use." [R. 41 at 12.] The Court is not convinced that recent developments in the understanding of mental health problems in Louisville, as pointed to by Ocean, render the Eastern District an improper venue. Rather his contentions of prejudice seem speculative and

8

directed at providing him with a favorable trial venue as opposed to merely an impartial one. Furthermore, any potential issues with the jury pool in the Eastern District seem, at this point, readily solvable in *voir dire*. Accordingly, Federal Rule of Criminal Procedure 21(a) does not compel this Court to transfer the Defendants' case to the Western District of Kentucky.

### 2

Ocean's last argument for transfer is that transfer is warranted under Federal Rule of Criminal Procedure 21(b). [R. 40-1 at 7-14.] Under Rule 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). To determine whether a venue transfer is appropriate, the Sixth Circuit provides ten factors for a District Court to consider:

> (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceedings; (4) the location of relevant documents and records; (5) disruption of the defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964); *United States v. Micciche*, 165 F. App'x 379, 385 (6th Cir. 2006).

Deciding whether a transfer of venue is appropriate is within the discretion of the trial court. *United States v. Tremont*, 351 F.2d 144, 146 (6th Cir. 1965). A denial of a Rule 21(b) motion to transfer is erroneous only if the district judge commits an abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005). It can be inferred from an objection to a motion to transfer venue that the transfer of venue is not convenient for all parties, as is required under Rule 21(b). *United States v. Jamal*, 246 F. App'x 351, 368-69 (6th Cir. 2007). Here both

the Government and Ocean's co-defendant Robertson oppose transfer.  [R. 41; R. 42.]  The Court will therefore consider each of the relevant *Platt* factors in turn.

*Location of the Defendants*

Defendant Ocean resides in both North Carolina and Louisville, while Defendant Robertson resides in Louisville.  However, Robertson opposes the motion and would prefer trial to occur in Frankfort.  [R. 42 at 1.]  Travel between Louisville and Frankfort is generally unchallenging, with less than sixty miles separating the two cities.  As the government acknowledges, this factor does slightly favor transfer due to the convenience of Ocean.  [R. 41 at 8.]  Nevertheless, the inconvenience at issue here is generally minimal.  Any trial will result in some inconvenience to the parties; it is not clear that the inconvenience caused by this factor is so great that it tilts heavily toward transfer.

*Location of Witnesses*

Defendant Ocean also contends that the location of possible witnesses in the Western District weighs in favor of transfer.  [R. 40-1 at 8-9.]  He notes that many potential witnesses are "indigent Medicaid beneficiaries" who would be burdened by travel.  *Id.*  The Government notes that while some witnesses will certainly be Medicaid recipients from Louisville, others live in the Eastern District.  [R. 41 at 8-9.]  Furthermore, the government emphasizes that many of these witnesses will not be faced with presenting extensive testimony, but will be needed for likely only a day of testimony.  *Id.*  By contrast, many DMS employees "likely to testify work in Frankfort" and are likely to testify "for longer and potentially across multiple days."  *Id.*  In his reply Ocean appears to suggest that the government's contentions are largely conjectural, [R. 43 at 6], but he fails to grapple with the fact that his are as well.  At this point then this factor seems neutral, with some witnesses inconvenienced by trial in Frankfort and others inconvenienced by

trial in Louisville. As the government points out, 28 U.S.C. §§ 1821 and 1825 address travel expenses for fact witnesses and allow them to be compensated for their time, mitigating many of the challenges associated with trial.

### Location of Events

Ocean contends that the vast majority of events involved in this case occurred in the Western District. [R. 40-1 at 8, 10.] He emphasizes that the health care services at issue in this case were provided in Louisville and billing claims were submitted by the defendants from the Western District. *Id*. The government appears to concede that many events did occur in the Western District, but argues that "the submission of the defendants' Medicaid claims to DMS in Frankfort is just as much an "event" as the creation of records after Medicaid member therapy sessions – or lack thereof – in Louisville." [R. 41 at 9.] On some level this seems to be six of one and half dozen of the other – some events important to the case were in the Western District and other equally important events occurred in the Eastern District. From a commonsense perspective this factor does slightly favor transfer. However, the government rightly points out that the alleged criminal activity in this case "will be established by witness testimony, as well as electronic and physical records," seemingly mitigating much of the importance attached to where the events predominantly occurred. *Id*. The Court therefore finds this factor to be neutral.

### Expense to the Parties

As Ocean notes, "[t]rials are expensive regardless of where they are held." [R. 43 at 7.] While Ocean is based in Louisville, his counsel is based in Frankfort, suggesting no-to-negligible increases to his expenses regardless of where trial occurs. However, the government avers that for its attorneys and staff, "transferring the trial to Louisville would more than double its daily commute distance and potentially require overnight lodging." [R. 41 at 10.] The government

has spent considerable time investigating and preparing this complex case and Ocean has not demonstrated how he or Robertson would be spared meaningful expenses were the case to be transferred. Therefore, the expense to the parties seems to weigh slightly against transfer.

### Location of Counsel

In this case Defendant Ocean's counsel is based in Frankfort, while the government's counsel is based in Lexington. [R. 41 at 10.] Furthermore, Defendant Robertson's counsel is based in the Eastern District and is not on the CJA panel for the Western District of Kentucky. [R. 41 at 1.] Provisions would therefore need to be made to ensure Robertson could retain her existing counsel. Overall, this factor therefore weighs against transfer.

### Relative Accessibility

Frankfort is located on a major interstate highway, I-64, and is within striking range of both the Louisville and Lexington airports should any airline travel be necessary. Ocean contends that this factor therefore favors Louisville, given that it has its own airport. [R. 43 at 7.] The Court is unconvinced, however, that this moves the needle given the presence of the Lexington airport in the Eastern District and the relatively easy access both Lexington and Louisville have to Frankfort along I-64. This factor therefore appears to be neutral.

### Other Special Elements and Factors

The following *Platt* factors appear to have little effect on transfer one way or the other: the location of relevant documents and records; any disruption of the defendant's business unless the case is transferred; and the docket condition of each district or division involved. While the Court has considered them, they are functionally neutral as to transfer.

The Court also considers any special elements that may not otherwise be captured in the previously considered *Platt* factors. While structurally Ocean relies on *United States v.*

*Flaxman*, 304 F. Supp. 1301 (S.D.N.Y. 1969), for his contention that the "most informed jury" is found in the Western District, [R. 40 at 11-14], and thus the interests of justice require transfer, the Court has considered that argument in its analysis of Federal Rule of Criminal Procedure 21(a) above and already found it to be lacking.  The Court reiterates that *Flaxman* is not on all fours with this case, nor is it a binding decision.  Substantively Ocean's reliance on *Flaxman* merely reiterates his arguments on possible prejudice involving the Louisville community's knowledge of local mental health struggles and other related societal issues.[2]  It is therefore not a special element that would shift the Court's discretionary decision on transfer under Rule 21(b) and the various *Platt* factors.

### In Summary

Having considered the various factors, the Court finds that transfer is not in the interests of convenience or justice.  The *Platt* factors are largely neutral in this case, with some cutting toward transfer and others cutting against.  Any convenience for some parties generated by transfer would be at the cost of inconvenience imposed on other parties, and the Court is not interested in robbing Peter to pay Paul.  Accordingly, the Court will not order a discretionary transfer of venue under Federal Rule of Criminal Procedure 21(b).

---

[2] Ocean makes this clear in his Reply Brief where he states that Louisville and the Eastern District's Frankfort Division "are culturally different and face different social obstacles."  [R. 43 at 4-5.]  He goes on to clarify that his argument is "not that the racial makeup of the two districts alone requires transfer… but that collectively, the difference in racial composition and the realities that arise therefrom… make it clear that Louisville is the venue in which the defendants may 'be tried before the most informed jury' and 'among those who know the local conditions' and 'who should thus be able to draw the most accurate inferences from the evidence presented at trial.'"  *Id*. citing *Flaxman*, 304 F. Supp. at 1303.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Ocean's Motion to Change Venue **[R. 40]** is **DENIED**.

This the 19th day of March, 2025.

Gregory F. Van Tatenhove
United States District Judge